```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF TEXAS
                     FORT WORTH DIVISION

WANDA LAFAYE LEE,                §
(BOP No. 33841-177)              §
VS.                              § CIVIL ACTION NO.4:10-CV-033-Y
                                 §
                                 §
BUREAU OF PRISONS, et al.        §
```

OPINION AND ORDER GRANTING THE MOTION FOR SUMMARY JUDGMENT OF INDIVIDUAL DEFENDANTS KELLY AND SURPRIS, DENYING THE MOTION FOR SUMMARY JUDGMENT OF THE BUREAU OF PRISONS WITHOUT PREJUDICE and, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In this case, inmate Wanda LaFaye Lee has claims remaining against individual defendants Michael Kelly, former captain at FMC--Carswell; Pascale Surpris, a mid-level practitioner at FMC--Carswell; and against the United States of America ("the USA"). Lee's pleadings in this case consist of a complaint, two responses to Court orders for a more definite statement, and a supplement thereto. (June 1 and November 30, 2010, Responses to Order Directing Plaintiff to File a More Definite Statement.) The Court previously dismissed, under authority of 28 U.S.C. §§ 1915A and 1915(e)(2)(B), Lee's claims against Warden Elaine Chapman and Lieutenant Champion, and all claims against the Bureau of Prisons. The defendants have appeared in this case by filing a motion for summary judgment, along with a brief in support and an appendix. Lee timely filed a response with incorporated brief and an appendix. Plaintiff Lee also filed a motion for summary judgment, along with an appendix. Defendants filed a response to Lee's motion for summary judgment, and she then filed a reply.

As a preliminary matter, although the motion for summary judgment against Lee's claims under the Federal Tort Claims Act ("FTCA") is brought on behalf of the Bureau of Prisons, as noted above, this Court previously dismissed all claims against the Bureau of Prisons. The Court then allowed Lee to state whether her claims under the FTCA were against the United States and, after Lee filed a supplement/response to the more definite statement, the Court expressly allowed Lee to maintain a clam under the FTCA against the United States of America and directed the clerk of Court to add the United States to the docket. (December 2, 2010 Order.) In spite of this procedural history, the motion for summary judgment raising a defense to the claim under the FTCA was filed on behalf of the Bureau of Prisons. Because the claims against the Bureau of Prisons were already dismissed, and because the Court expressly allowed Lee's FTCA claim to be pursued against the United States, the Court concludes that the motion for summary judgment as to the Bureau of Prisons must be denied without prejudice to the United States's filing an appearance and defending Lee's claim under the FTCA, within 21 days of the date of this order.

The Court also notes that Lee's motion for summary judgment actually argues that she has established that there **are** genuine issues of material fact. The motion also is supported by an appendix containing the same documents that Lee filed in support of her response to the defendants' motion for summary judgment. Thus,

as Lee's motion for summary judgment essentially amounts to an additional response to the defendant's motion for summary judgment, and because Lee's motion does not show that she is entitled to judgment as a matter of law, Lee's motion labeled as one for summary judgment must be denied.

Defendants Kelly and Surpris each assert, by their motion for summary judgment, that each is entitled to qualified immunity from Lee's claim that they were deliberately indifferent to a serious risk of harm. For the reasons set forth below, the Court concludes that the individual defendants' motion for summary judgment must be granted.

*Summary-Judgment Evidence*

Defendants have filed an appendix in support of their motion for summary judgment which includes, as Exhibit A, the February 10, 2011 Declaration of Hernan Reyes, M.D., along with 19 pages of records of the Bureau of Prisons. In contest to the defendants' summary judgment motion, Lee supplied an appendix containing copies of many of the same records provided by defendants, copies of several additional pages of medical records, a copy of a dictionary page, three photographs of a lesion on her foot, and the affidavits of Otrese Barnes, Sarah Richie, and Christina Johnson.[1] Also, as Lee expressly declared that her more definite statement

---

[1] As these "affidavits" each recite the same statements relating to the April 4, 2008 incident, the Court will consider only one of the affidavits--that of Otrese Barnes.

and supplemental more definite statement were true and correct under penalty of perjury, this Court is required to consider such pleadings as summary judgment evidence.[2]

*Summary-Judgment Standard*

Summary judgment is appropriate when the record establishes "that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."[3] The party moving for summary judgment has the initial burden of informing the Court of the basis for his motion and producing evidence that tends to show that no genuine dispute as to any material fact exists and that he is entitled to judgment as a matter of law.[4] Once the moving party has made such a showing, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine dispute for trial.[5] Whether a dispute is "genuine" is a determination of whether it is "real and substantial, as opposed to merely formal, pretended, or a sham."[6]

---

[2] *See Nissho-Iwai American Corp. v. Kline,* 845 F.2d 1300, 1306 (5th Cir. 1989)(noting that although unsworn affidavit is incompetent to raise a fact issue precluding summary judgment, the statutory exception in 28 U.S.C. § 1746 permits unsworn declarations to substitute for an affidavit if made "under penalty of perjury" and verified as "true and correct.") Lee did not so declare as to her original complaint.

[3] Fed. R. Civ. P. 56(a).

[4] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).

[5] *Id.*, at 322-23; *Anderson,* 477 U.S. at 257.

[6] *Bazan ex rel. Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir. 2001)(citing *Wilkinson v. Powell,* 149 F.2d 335, 337 (5th Cir. 1945)).

4

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law.[7] No genuine dispute of material fact exists if no rational trier of fact could find for the nonmoving party based on the evidence presented.[8] The Court must consider all evidence in the light most favorable to the nonmoving party.[9]

*Facts*

Bureau of Prisons records show that on February 27, 2008, Lee was placed in the FMC--Carswell Special Housing Unit (SHU) on Administrative Detention (AD) status and remained there until April 1, 2008, when she was escorted to John Peter Smith Hospital in Fort Worth, Texas. (Reyes Declaration ¶ 3; Lee "Inmate History," exhibit 4.)  On that date, Lee underwent right knee surgery, and was then discharged on April 4, 2008. (Reyes ¶ 3, exhibits 5-7, 8.)  Lee was transported back to FMC--Carswell that same day, and was returned to the SHU at approximately 2:00 p.m. (Reyes, exhibit 4.)  Lee states that Captain Kelly made the decision to have her placed back in SHU upon her return from the hospital, and he should not have done so, when she had a fresh wound. (More Definite Statement (MDS) ¶ 5.)  Because Lee had been housed in the SHU prior to her hospital trip, staff returned Lee to the SHU temporarily while the special

---

[7] *See Anderson,* 477 U.S. at 248.

[8] *See National Ass'n of Gov't Employees v. City Pub. Serv. Bd.,* 40 F.3d 698, 712-13 (5th Cir. 1994).

[9] *See Id.* at 713.

housing room within the institution's medical/surgical unit was being vacated. (Reyes ¶ 3.) It is the standard practice at FMC--Carswell for inmates to be returned to the same housing unit to which they were assigned prior to their medial trips, unless their medical conditions require closer observation and/or medical treatment.  Because Lee had been housed in the SHU prior to her knee operation, staff placed her in the SHU temporarily while the special housing room on the Medical Surgical unit was being prepared. (Reyes ¶ 5.)

Lee alleges that physician's assistant Surpris questioned Lee's placement in the SHU upon her return from surgery, and was told by Lieutenant Champion that she was placed there because it is where she was housed prior to surgery.  (MDS ¶ 7.) The affidavit provided on behalf of Lee asserts that Lee was placed in the SHU upon her return form surgery with three other inmates. (Otrese Barnes Declaration ¶ A.)  It also states that inmate Johnson had to bang on the door to get the officer to call a nurse about getting Lee's pain medication. (Barnes Decl. ¶ B.)  The inmate states that she advised another officer about the situation involving Lee and the officer said he would find out about the delay in getting Lee's medication and why she had been housed in the SHU. (Barnes Decl. ¶ C.)  The inmate also states that Lee was not moved until 9:55 p.m., because even though Lee had been placed "on the count up on med/surg at approximately 8:40," she was still within the SHU until 9:55. (Barnes Decl. ¶ E.)

BOP medical records, however, show that at 3:00 p.m. on April 4, 2008, Lee was seen in the institution's health service clinic, where staff prescribed the medications recommended in the discharge instructions from the hospital, and issued her a walker and crutches. (Reyes ¶ 3, exhibits 8, 10.) Around 8:40 p.m. that night, records indicate Lee was taken to the medical/surgery special housing room, where the nurse noted that Lee was "brought from SHU in a wheelchair" and noted "she returned from hospital today, seen in clinic and sent to SHU." (Reyes ¶ 3, Exhibit 12.) The nurse also noted that Lee complained of pain and claimed that she had not received any pain medication since her return. The nurse noted her ace bandage, that her knee had some swelling, and noted that she was to use a walker as needed and to be given medication as needed. (Exhibit 12.) That same record indicates that the next morning, April 5, a doctor was called to see Lee, and the resulting notes indicate that her staples were in place and that there was mild swelling but no evidence of infection. (Exhibit 12.)

A discharge summary prepared by N. Lorenzi, M.D., noted Lee's care in the medical surgery unit between April 4 and April 16, when Lee was returned to her unit. (Exhibits 14-16.) That summary indicates that while in the medical unit, Lee was given physical therapy daily and progressed nicely on a CPM machine until she was able to ambulate on the unit with a walker, and was given Percocet for pain in addition to her usual medications. (Exhibit 15.) The doctor noted that while in the medical unit on April 7, Lee

7

complained of an itchy lesion, which upon examination and culture, was determined to be herpes simplex virus I, and was then successfully treated with Acyclovir 400 mg. (*Id.*) On April 15, Lee was evaluated for follow-up by the orthopedic surgeon who performed the knee surgery. That surgeon noted Lee was doing very well, and removed her surgical staples. (*Id.*) On April 16, Lee was discharged from the medical surgery unit back to the SHU, where she remained until May 6, 2008. (Exhibits 4, 15.)

On May 18, Lee complained of a possible staph infection on her right knee. (Reyes ¶ 4, exhibit 17.) Staff assessed Lee, noted a red swollen area at her incision site and prescribed Clindamycin 300 mg for her condition. (Exhibit 17.) The May 18 record also indicates that Lee reported having had "MRSA in the past." (Id.) On May 19, Lee was again seen by medical staff, and the staff, after noting Lee's giving a "history of chronic MRSA," collected a culture from her wound, which subsequently tested positive for MRSA. (Reyes ¶ 4, exhibit 18.)

*Analysis–Captain Kelly and PA Surpris*

Kelly and Surpris seek summary judgment on the basis that they are entitled to qualified immunity from Lee's claim of a constitutional violation. The doctrine of qualified immunity protects public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known."[10] The doctrine balances the important interests of holding "public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[11] Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved at the earliest possible stage in the litigation.[12]

In order to determine whether a government official is entitled to qualified immunity, this Court must undertake a two-pronged analysis, inquiring: (1) whether the facts that the plaintiff has alleged make out a violation of a constitutional or statutory right; and (2) whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct.[13] This Court has discretion to decide which of the two prongs to

---

[10] *Pearson v. Callahan,* 555 U.S. 223, 231 (2009)(quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).

[11] *Pearson,* 555 U.S. at 231.

[12] *Hunter v. Bryant,* 502 U.S. 224, 227 (1991).

[13] *Pearson,* 555 U.S. at 232 (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). The United States Court of Appeals for the Fifth Circuit previously phrased the analysis as a three-part inquiry that also included a third step determination of "whether the record indicates that the violation occurred, or gives rise to a genuine issue of material fact as to whether the defendant actually engaged in the conduct that violated the clearly established right." *Conroe Creosoting Co. V. Montgomery Cty, Tex., et al.,* 249 F.3d 337, 340 (5th cir. 2001). The court of appeals now defines the test as a two-prong inquiry. *Morgan v. Hubert,* No. 10-31307, 2012 WL 171605, at *3 (5th Cir. Jan. 20, 2012); *Jennings v. Patton,* 644 F.3d 297, 300 (5th Cir. June 17, 2011). The Court observes that the previously identified third element is implicit in the first portion of the Supreme Court's articulation in *Pearson,* where the Supreme Court described that analysis as involving a determination of "whether the facts that a plaintiff *has alleged* (see Fed. Rules Civ. Proc. 12(b)(6), (c)) *or shown* (see Rules 50, 56) make out a violation of a constitutional right." *Pearson,* 555 U.S. at 232.

address first based upon the circumstances of the case.[14]

Although qualified immunity is normally an affirmative defense, the plaintiff has the burden to negate the defense once it has been properly raised.[15] "The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority."[16] Once the defense is raised, the burden shifts to the plaintiff to rebut the qualified-immunity defense.[17]

*Violation of a Constitutional Right*

Although *Pearson* thus authorizes this Court to resolve the qualified-immunity issue through analysis under the second step, the Court concludes that it is appropriate to address and resolve this motion for summary judgment by analyzing the first step of the qualified-immunity inquiry.[18] As noted previously, the Court has considered the constitutional-violation claim against Kelly and Surpris as pursued under *Bivens* v. *Six Unknown Named Agents of the*

---

[14] *See Pearson,* 555 U.S. at 236 (rejecting *Saucier's* mandatory two-step sequence); *Lytle v. Bexar County, Tex.,* 560 F.3d 404, 409 (5th Cir. 2009), *cert. den'd,* 130 S.Ct. 1896 (2010).

[15] *Brumfield v. Hollins,* 551 F.3d 322, 326 (5th Cir. 2008); *Mcclendon v. city of Columbia,* 305 F.3d 314, 323 (5th Cir. 2002)(en banc), *cert. den'd,* 537 U.S. 1232 (2003).

[16] *Brumfield,* 551 F.3d at 326 (quoting *Bazan ex rel. Bazan v. Hidalgo County,* 2246 F.3d 481, 489 (5th Cir. 2001)).

[17] *Id.*

[18] *See generally Id.,* at 821("Our decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases.")

*Federal Bureau of Narcotics ("Bivens")*.[19] Lee claims that Kelly and Surpris were deliberately indifferent to her needs in violation of the Eighth Amendment by placing her, upon her return from surgery, in the SHU and allowing her to remain their for several hours. (Compl. at 3-4, MDS ¶¶ 5, 7.) In considering the first part of the qualified-immunity analysis, in order to make out a claim of deliberate indifference, a plaintiff must demonstrate that the defendant official has actual subjective knowledge of a substantial risk of serious harm, but responds with deliberate indifference to that risk.[20] Such a finding of deliberate indifference, though, "must rest on facts clearly evincing 'wanton' actions on the parts of the defendants."[21] This subjective deliberate-indifference standard is now equated with the standard for criminal recklessness:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference can be drawn that a substantial risk of serious

---

[19] 403 U.S. 388, 297 (1971). *Bivens*, of course, is the counterpart to 42 U.S.C. § 1983, and extends the protections afforded under § 1983 to parties injured by federal actors. *See Evans v. Ball*, 168 F.3d 856, 863 n. 10(5th Cir. 1999) ("A *Bivens* action is analogous to an action under § 1983--the only difference being that § 1983 applies to constitutional violations by state, rather than federal officials"), *overruled on other grounds, Castellano v. Fragozo*, 352 F.3d 939, 948-49 & n. 36 (5th Cir. 2003), *cert den'd*, 543 U.S. (2004).

[20] *See Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996), *appeal after subsequent remand*, 135 F.3d 320, 327 (5th Cir. 1998).

[21] *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985); *see also Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

harm exists, and he must also draw the inference.[22]

Lee's claims against Kelly and Surpris relate only to the period on April 4 after she was returned to FMC-Carwell post-surgery. Lee alleges that she was left in the SHU without being seen or provided medication for eight hours. The medical records reveal, however, that although Lee was placed in the SHU at approximately 2:00 p.m. on April 4, she was then seen in the clinic at 3:00 p.m., and moved into the medical unit at 8:40 p.m.. Lee alleges in her complaint that Captain Kelly made the decision to house her in the SHU, and that he did so in retaliation for her having challenged and overturned a prior disciplinary charge. She claims "Captain Kelly had S.I.S. write me up in the past, I appealed it and won. He was obviously upset and used this opportunity to be mean and unjust in his handling of this situation." (MDS at ¶ 10.) Lee also alleges that Surpris "knew or should have known that it was medically unsound" to place her in the SHU. (MDS at ¶ 7.)

The defendants have come forward with evidence showing that it was the policy at FMC-Carswell to house an inmate, upon return from an outside transport for medical care, to the same housing designation to which assigned prior to the removal. Lee's placement in the SHU upon her return on April 4 was consistent with this policy. As to the fact that she was held in the SHU for as many as eight hours (according to Lee), the defendants have provided

---

[22]*Farmer v. Brennan,* 511 U.S. 825, 837 (1994); *see also Hare,* 74 F.3d at 648.

12

evidence that she was retained in the SHU in the afternoon and evening of April 4 until an SHU room within the medical surgical unit was made available. Lee has not come forward with evidence to rebut these facts or to support her allegation that Kelly's actions in making Lee's placement were retaliatory or made with an intent to punish her. Lee has not come forward with evidence to create any genuine issues of fact related to the alleged deliberate indifference of Kelly or Surpris.

In order to establish a genuine issue of material fact, non-moving-party Lee must "'go beyond the pleadings,' and by affidavits or other competent summary judgment evidence cite 'specific facts' that show there is a genuine issue for trial."[23] Lee cannot defeat summary judgment "with conclusory allegations, unsubstantiated assertions or 'only a scintilla of evidence.'"[24] Lee has made allegations suggesting minor differences as to when she received medication and care and when she was moved into the medical/surgical unit on April 4. But she has presented no evidence to contest the evidence provided by defendants that her placement in SHU was consistent with FMC-Carswell policy, and that her presence in SHU for up to eight hours resulted from there not being available space in the medical/surgical unit.

As Lee has not provided specific evidence supportive of her allegations against Kelly and Surpris in response to the motion for

---

[23]*See Bustos v. Martini Club Inc.*, 599 F.3d 458, 468 (5th Cir. 2010)(quoting *Celotex,* 477 U.S. at 324)).

[24]*See Hathaway v. Bazany,* 507 F.3d 312, 319 (5th Cir. 2007)(internal citations omitted).

13

summary judgment, she has not met her burden to show that Kelly or Surpris violated her constitutional right to be free of deliberate indifference to a serious risk of harm. Thus, both Kelly and Surpris are entitled to qualified immunity.[25]

*ORDER*

Therefore, the motion for summary judgment of plaintiff Wanda Lafaye Lee filed on April 15, 2011 (doc. 49), is DENIED.

The motion for summary judgment filed by the Bureau of Prisons (doc. 41, in part) is DENIED, without prejudice to an assertion by the United States of America of a defense to the FTCA claim within 21 days of the date of this order.

The motion for summary judgment of Captain Michael Kelly and Pascale Surpris (doc. 41, in part) is GRANTED. Plaintiff shall take nothing on his claims against defendants Captain Michael Kelly and Pascale Surpris, and such claims are DISMISSED WITH PREJUDICE.

SIGNED February 22, 2012.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[25]*See generally Id.*, (noting that once a movant comes forward with the qualified-immunity defense, the evidentiary burden is on the non-movant plaintiff to show that defendants are not entitled to qualified immunity.)

14