IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| WANDA LAFAYE LEE, § | |
| (BOP No. 33841-177) § | |
| VS. § | CIVIL ACTION NO.4:10-CV-033-Y |
| § | |
| § | |
| BUREAU OF PRISONS, et al. § | |

**OPINION AND ORDER GRANTING THE MOTION FOR SUMMARY JUDGMENT
OF THE UNITED STATES OF AMERICA**

In this case, Wanda LaFaye Lee has claims remaining only against the United States of America ("the USA"). Lee's pleadings in this case consist of a complaint, two responses to Court orders for a more definite statement, and a supplement thereto. (June 1 and November 30, 2010, Responses to Order Directing Plaintiff to File a More Definite Statement.) Pending before the Court is the USA's motion for summary judgment, brief in support, and appendix, all filed on March 14, 2012. The Court previously denied a similar motion for summary judgment filed on behalf of the Bureau of Prisons, without prejudice to the USA's asserting such defense. Although Lee did not file any response to the USA's motion for summary judgment, because she did previously file a response to the same arguments, the Court has reviewed that prior response and the appendix thereto (docs. 46 and 47). Even with a review of Lee's responsive materials, because she has not provided support for her negligence claims through the report of an expert, she has not created a genuine dispute of material fact. Therefore, the motion for summary judgment of the USA must be granted.

*Summary-Judgment Evidence*

Defendant has filed an appendix in support of the motion for summary judgment which includes, as Exhibit A, the February 10, 2011 Declaration of Hernan Reyes, M.D., along with 19 pages of records of the Bureau of Prisons. In contest to the claims in the defendant's summary-judgment motion, Lee previously supplied an appendix containing copies of many of the same records provided by Defendant, copies of several additional pages of medical records, a copy of a dictionary page, three photographs of a lesion on her foot, and the affidavits of Otrese Barnes, Sarah Richie, and Christina Johnson.[1] Also, as Lee expressly declared that her more definite statement and supplemental more definite statement were true and correct under penalty of perjury, this Court is required to consider such pleadings as summary-judgment evidence.[2]

*Summary-Judgment Standard*

Summary judgment is appropriate when the record establishes "that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."[3] The party moving for summary judgment has the initial burden of

---

[1] As these "affidavits" each recite the same statements, the Court will consider only one of the affidavits--that of Otrese Barnes.

[2] *See Nissho-Iwai American Corp. v. Kline,* 845 F.2d 1300, 1306 (5th Cir. 1989)(noting that although unsworn affidavit is incompetent to raise a fact issue precluding summary judgment, the statutory exception in 28 U.S.C. § 1746 permits unsworn declarations to substitute for an affidavit if made "under penalty of perjury" and verified as "true and correct.") Lee did not so declare as to her original complaint.

[3] Fed. R. Civ. P. 56(a).

informing the Court of the basis for his motion and producing evidence that tends to show that no genuine dispute as to any material fact exists and that he is entitled to judgment as a matter of law.[4] Once the moving party has made such a showing, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine dispute for trial.[5] Whether a dispute is "genuine" is a determination of whether it is "real and substantial, as opposed to merely formal, pretended, or a sham."[6] A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law.[7] No genuine dispute of material fact exists if no rational trier of fact could find for the nonmoving party based on the evidence presented.[8] The Court must consider all evidence in the light most favorable to the nonmoving party.[9]

*Facts*

Bureau of Prisons records show that on February 27, 2008, Lee

---

[4] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).

[5] *Catrett*, 477 U.S. at 322-23; *Anderson,* 477 U.S. at 257.

[6] *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)(citing *Wilkinson v. Powell,* 149 F.2d 335, 337 (5th Cir. 1945)).

[7] *See Anderson,* 477 U.S. at 248.

[8] *See National Ass'n of Gov't Employees v. City Pub. Serv. Bd.,* 40 F.3d 698, 712-13 (5th Cir. 1994).

[9] *See Id.* at 713.

was placed in the FMC--Carswell Special Housing Unit (SHU) on Administrative Detention (AD) status and remained there until April 1, 2008, when she was escorted to John Peter Smith Hospital in Fort Worth, Texas. (Reyes Declaration ¶ 3; Lee "Inmate History," exhibit 4.) On that date, Lee underwent surgery on her right knee and was then discharged on April 4, 2008. (Reyes ¶ 3, exhibits 5-7, 8.) Lee was transported back to FMC--Carswell that same day, and was returned to the SHU about 2:00 p.m. (Reyes, exhibit 4.) Lee states that Captain Kelly made the decision to have her placed back in SHU upon her return from the hospital, and he should not have done so because she had a fresh wound. (More Definite Statement (MDS) ¶ 5.) Because Lee had been housed in the SHU prior to her hospital trip, Carswell staff returned Lee to the SHU temporarily while the special housing room within the institution's medical/surgical unit was being vacated. (Reyes ¶ 3.) It is the standard practice at FMC--Carswell for inmates to be returned to the same housing unit to which they were assigned prior to their medical trips unless their medical conditions require closer observation and/or medical treatment. Because Lee had been housed in the SHU prior to her knee operation, staff placed her in the SHU temporarily while the special housing room on the medical/surgical unit was being prepared. (Reyes ¶ 5.)

The affidavit provided on behalf of Lee asserts that Lee was placed in the SHU upon her return from surgery with three other inmates. (Otrese Barnes Declaration ¶ A.) It also states that

4

inmate Johnson had to bang on the door to get the officer to call a nurse about getting Lee's pain medication. (Barnes Decl. ¶ B.) The inmate states that she advised another officer about the situation involving Lee and the officer said he would find out about the delay in getting Lee's medication and why she had been housed in the SHU. (Barnes Decl. ¶ C.) The inmate also states that Lee was not moved until 9:55 p.m. because, even though Lee had been placed "on the count up on med/surg at approximately 8:40," she was still within the SHU until 9:55. (Barnes Decl. ¶ E.)

BOP medical records, however, show that at 3:00 p.m. Lee was seen in the institution's health-service clinic, where staff prescribed the medications recommended in the discharge instructions from the hospital, and issued her a walker and crutches. (Reyes ¶ 3, exhibits 8, 10.) The records also indicate that, around 8:40 p.m., Lee was taken to the medical/surgery special housing room, where the nurse noted that Lee was "brought from SHU in a wheelchair" and "returned from hospital today, seen in clinic and sent to SHU." (Reyes ¶ 3, Exhibit 12.) The nurse also noted that Lee complained of pain and claimed that she had not received any pain medication since her return. The nurse noted her ace bandage, that her knee had some swelling, and that she was to use a walker as needed and to be given medication as needed. (Exhibit 12.) That same record indicates that the next morning, April 5, a doctor came to see Lee, and the resulting notes indicate that her staples were in place and that there was mild swelling but

no evidence of infection. (Exhibit 12.)

A discharge summary prepared by N. Lorenzi, M.D., noted Lee's care in the medical/surgery unit between April 4 and the day Lee was returned to her unit, April 16. (Exhibits 14-16.) That summary indicates that while in the medical unit Lee was given physical therapy daily, that she progressed nicely on a CPM machine until she was able to ambulate on the unit with a walker, and that she was given Percocet for pain in addition to her usual medications. (Exhibit 15.) The doctor noted that while in the medical unit on April 7, Lee complained of an itchy lesion that, upon examination and culture, was determined to be herpes simplex virus I, and was then successfully treated with Acyclovir 400 mg. (*Id*.)  On April 15, Lee received a follow-up evaluation by the orthopedic surgeon who performed her knee surgery.  That surgeon noted Lee was doing very well and he removed her surgical staples. (*Id*.) On April 16, Lee was discharged from the medical surgery unit back to the SHU, where she remained until May 6. (Exhibits 4, 15.)

Lee complained on May 18 of a possible staph infection on her right knee. (Reyes ¶ 4, exhibit 17.)  Staff assessed Lee, noted a red swollen area at her incision site and prescribed the antibiotic Clindamycin (300 mg) for her condition. (Exhibit 17.) The May 18 record also indicates that Lee reported having had "MRSA in the past." (Id.)  On May 19 Lee was again seen by medical staff, and the staff, after noting Lee's giving a "history of chronic MRSA," collected a culture from her wound, which subsequently tested

positive for MRSA. (Reyes ¶ 4, exhibit 18.)

*Analysis*

Lee's remaining claim against the USA is that her placement within the SHU after her return to FMC--Carswell from the outside hospital was negligence which caused her to develop MRSA. (Complaint[10] 3-4, 11; November 30, 2012, Supplemental More Definite Statement ¶¶ 2,4,7, and 11.) The FTCA authorizes civil actions for damages against the United States for personal injury caused by the negligence of government employees when private individuals would be liable under the substantive law of the state in which the negligent acts occurred.[11] In this case, the Court applies Texas law because the complained-of acts occurred in Texas. Under Texas law, negligence consists of three elements: (1) a legal duty owed; (2) a breach of that duty; and (3) damages proximately caused from the breach.[12] Expert testimony is required when the alleged negligence is "of such a nature as not to be within the experience of the layman."[13] In this regard, "mere speculation or conjecture is not sufficient to establish [a] causal connection between a defendant's

---

[10] As noted in previous orders, Lee's complaint is not sequentially numbered, but the Court has sequentially numbered each page of the complaint and supplemental pages labeled "Important things to Note" as a total of 14 pages. The court refers to the portions of the complaint by these new page numbers.

[11] 28 U.S.C.A. § 1346(b)(West 2006); 28 U.S.C.A. § 2674 (West 2006); *see also Quijano v. United States,* 325 F.3d 564, 567 (5th Cir.2003).

[12] *Mellon Mortg. Co. V. Holder,* 5 S.W. 3d 654, 663 (Tex. 1999)(citing *El Chico Corp. V. Poole,* 732 S.W. 2d 306, 311 (Tex. 1987)).

[13] *FFE Transp. Serv., Inc. V. Fulgham,* 154 S.W.3d 84, 90 (Tex. 2004)(quoting *Roark v. Allen,* 633 S.W.2d 804, 809 (Tex. 1982))(other citations omitted).

conduct and the plaintiff's injuries."[14]

Under Texas law, proximate cause incorporates two elements: cause in fact and forseeability.[15] "These elements cannot be established by mere conjecture, guess or speculation."[16] "The test for cause in fact is whether the negligent 'act or omission was a substantial factor in bringing about injury,' without which the harm would not have occurred."[17] The evidence must show that any alleged negligence was the proximate, and not the remote, cause of resulting injuries, and "justify the conclusion that such injury was the natural and probable result thereof."[18] There must be a causal connection between alleged negligence and the alleged injury.[19] In general, proximate cause must be shown by expert testimony.[20]

In this case, the questions of whether Lee's medical condition prohibited her placement in the SHU for several hours and whether she contacted MRSA as a result of that placement, are beyond lay

---

[14] *Martin v. Durden,* 965 S.W.2d 562, 567 (Tex.App.-Houston [14th Dist.] 1997 writ denied)(citation omitted).

[15] *Southwest Key Program, Inc. V. Gil-Perez,* 81 S.W. 3d 269, 274 (Tex. 2002)(citing *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W. 2d 472, 477 (Tex. 1995)).

[16] *Boys Clubs of Greater Dallas,* 907 S.W. 2d at 477 (citations omitted).

[17] *Id.* (internal quotations and citations omitted).

[18] *Id.* (internal quotation and citations omitted).

[19] *See Garza v. Levin,* 769 S.W. 2d 644, 646 (Tex. App.- Corpus Christi 1989 writ denied).

[20] *Kalteyer v. Sneed,* 837 S.W.2d 848, 854 (Tex. App.-Austin 1992 no writ).

testimony.[21] Relatedly, in a suit alleging a breach of medical care, a plaintiff must prove four elements:(1) a duty by the physician or hospital to act according to an applicable standard of care, (2) a breach of that standard of care, (3) an injury, and (4) a causal connection between the breach of care and the injury.[22] But showing the threshold issue of the applicable standard of care[23] generally requires expert testimony.[24] In this case, the matters of whether Lee should have been housed in SHU and whether such placement could lead to the exposure to MRSA are not matters of common knowledge or within the experience of a layman. Thus, the issues of whether a post-surgery patient should have been allowed to be placed, even for a few hours, in the SHU, and whether that placement was a proximate cause of contracting MRSA, require expert testimony.

---

[21] *See generally Kalteyer,* 837 S.W. 3d at 854 ("A lay evaluation of this body of medical records might establish, in lay opinion, a question whether the reported symptoms were caused by the treatment or simply another symptom of an underlying disorder; i.e. conflicting inferences raising a fact issue. However, an expert evaluating the same records might know that the treatment administered could not have caused the symptoms reported").

[22] *See Hannah v. United States,* 523 F.3d 597, 601 (5th Cir. 2008)(citing *Quijano,* 325 F.3d at 567); *see also Denton Reg. Med. Ctr. V. LaCroix,* 947 S.W. 2d 941, 950 (Tex.App.-Fort Worth 1997, no pet.)

[23] *Hannah,* 523 F.3d at 601 (citing *Quijano,* 325 F.3d at 567 (citations omitted)).

[24] *Quijano,* 325 F.3d at 567 (citing *Hood v. Phillips,* 554 S.W. 2d 160, 165-66 (Tex. 1977); *see also Woods v. United States Government,* No. 10-10599, at *1-2 (5th cir. 2011)(rejecting inmate plaintiff's argument that any expert would provide only evidence that was within common knowledge, because his underlying claim of medical negligence required expert testimony).

But Lee has not provided information from any expert regarding the issues she alleges in this FTCA case against the USA.[25] She has not offered any competent evidence by an expert that could prove her central allegations that she developed MRSA due to the negligence of the staff at FMC--Carswell.[26] Lee cannot defeat summary judgment "with conclusory allegations, unsubstantiated assertions or 'only a scintilla of evidence.'"[27]

In her response to the motion for summary judgment, Lee refers to 18 U.S.C. § 4042, which imposes on the Bureau of Prisons the duties to "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons convicted of offenses against the United States" and to "provide for the protection . . . of all persons . . . convicted" of such offenses.[28] If Lee's citation to this statute is intended to be read as a claim that it creates a duty of care sufficient to support liability in a medical negligence case, the Court rejects such claim.[29] Thus, the

---

[25] In her response and supporting appendix to the summary judgment motion, Lee did not cite to any expert support for her claims.

[26] See Kennedy v. United States, No.00-51006, 2001 WL 822793, *1 (5th Cir. 2001)(inmate's conclusory assertions of negligence in the medical treatment he received were insufficient to carry his summary-judgment burden).

[27] See Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal citations omitted).

[28] 18 U.S.C.A. § 4042(a)(2) and (3)(West 2000).

[29] See generally Brown v. United States of America,, No.99-C-0400-C, 2000 WL 34235983 at *3 (W.D. Wis. Aug. 18, 2000)(noting that although § 4042 sets a duty of care, in order to determine liability, the court must look to the elements of state tort law and the state law requirement that a plaintiff support his claim with expert testimony)(citation omitted).

general duty enunciated in 18 U.S.C. § 4042 does not set forth the standard of care for a particular medical negligence claim, and Lee cannot rely upon that statute to avoid the obligation to provide expert testimony to meet her burden.

Thus, as Lee has failed to provide expert testimony or show that she could obtain expert testimony, she cannot create a material fact issue on whether the FMC--Carswell staff breached a duty that proximately caused her injury. The motion for summary judgment of the United States must be granted.

*ORDER*

Therefore, the motion for summary judgment filed by the United States of America (doc. 75) is GRANTED. Plaintiff Wanda Lee shall take nothing on her remaining claims against the United States of America and all such claims are DISMISSED WITH PREJUDICE.

SIGNED May 23, 2012.

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE